UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

OCTAVIA WINTERS,

          Plaintiff,

    v.                                      Case No. 25-cv-1802-bhl

CITY OF MILWAUKEE, et al.

          Defendants.

## SCREENING ORDER

In this lawsuit, *pro se* Plaintiff Octavia Winters asserts federal civil rights claims against the Milwaukee Police Department (MPD) and various unknown officers based on a series of interactions she had with them concerning her minor child. (ECF No. 1.) On December 4, 2025, the Court granted Winters's request to proceed with this lawsuit *in forma pauperis* (IFP) but concluded that her initial complaint failed to include sufficient factual allegations to state a claim and therefore dismissed it. (ECF No. 5.) In doing so, the Court granted Winters leave to amend to try to correct the issues identified in the Court's screening order. (*Id*.) Winters has filed an amended complaint, (ECF No. 6), and the matter is now before the Court for the screening of the amended complaint.[1]

## LEGAL STANDARD

In screening a *pro se* complaint, the Court applies the liberal pleading standards embraced by the Federal Rules of Civil Procedure. To survive screening, the complaint must comply with the Federal Rules and state at least plausible claims for which relief may be granted. To state a cognizable claim, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

---

[1] Winters is also pursuing a second lawsuit asserting very similar claims against the Kenosha Police Department. (*See Winters v. Kenosha Police Department*, 25-cv-01804-BHL (ECF No. 6).)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (citing *Twombly*, 550 U.S. at 555). A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). If the complaint fails to allege sufficient facts to state a claim on which relief may be granted, it must be dismissed. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1018 (7th Cir. 2013).

## ALLEGATIONS

Winters alleges that she is the custodial parent of a minor child, and that she has valid Wisconsin custody and restraining orders. (ECF No. 6 at 1.) She contacted Milwaukee Police officers at various locations on various dates in July of 2025 concerning custody matters and appears upset with their response to her complaints. (*Id.*) Winters alleges that she appeared at the MPD's District 5 station on July 4, 5, 6, 7, and 9, 2025 to file reports of custodial interference and restraining-order violations. (*Id.*) Winters does not specify what happened on each occasion, but asserts that Officer Rivera, Officer Miller, Lieutenant Cabral, Lieutenant Davis, Lieutenant Woods, Officer Griffin, and Officer Petty refused to take her reports, accused her of filing false reports, threatened to arrest her, and disclosed information to "the violating parties." (*Id.*)

Winters further alleges that she attempted to file custodial interference reports at MPD's District 3 station on July 10, 17, and 26, 2025. (*Id.*) Officer Sloan refused to file her reports, "warned violators," and removed her from the station. (*Id.*) On July 26, 2025, Officer Basaldua, Officer Behrs, and Sergeant Cabral "delayed reporting" and "allowed" Winters's child to "remain unlawfully absent beyond 24 hours." (*Id.*)

On July 24, 2025, Winters's child was at an MPD facility with Officer Burch. Instead of supervising the child "under missing-child protocols," Officer Burch "remained on the telephone with [Winters] and allowed the child to leave the building," releasing the child into the care of his or her paternal aunt, and the child was then transported to Kenosha County without Winters's consent. (*Id.*)

On July 31, 2025, Officer Perez and Officer Ramirez entered Winters's residence and "removed her child without notice, service, or a valid court order, relying on a void Kenosha County order." (*Id.*) Winters repeatedly notified officers that her child requires a daily psychiatric medication, and the officers refused to classify her child as critically missing or document the medical risk. (*Id.* at 2.) Winters asserts that "[c]ustodial interference and non-enforcement continued through November 2025." (*Id.*)

## ANALYSIS

Based on the allegations set forth above, Winters contends Defendants violated her "Fourth Amendment rights, Fourteenth Amendment due process rights, right to familial association, equal protection, and access to the courts." (*Id.* at 2.) She attempts to bring these claims through 42 U.S.C. §1983. (*Id.* at 1.)

Winters's amended complaint states a claim against Officers Perez and Ramirez for violating her Fourth Amendment rights. To state a claim under Section 1983, Winters must identify a person or persons acting under color of law who violated her federal rights. *Case v. Milewski*, 327 F.3d 564, 566 (7th Cir. 2003). Police officers are persons acting under color of law and may thus be held liable under Section 1983. To maintain a Fourth Amendment claim, Winters must therefore allege state action that violated the Fourth Amendment. The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. Warrantless, nonconsensual entries into a home are presumptively unconstitutional. *Id.*; *see Payton v. New York*, 445 U.S. 573, 576 (1980). A state actor removing a child from a home can constitute a seizure under the Fourth Amendment. *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1010–12 (7th Cir. 2000). Winters describes a July 31, 2025 entry into her home, during which Officers Perez and Ramirez removed her child without "notice, service, or a valid court order, relying on a void Kenosha County order." (ECF No. 6 at 1.) From these allegations, the Court can infer a potential Fourth Amendment violation related to the July 2025 entry into her home and removal of her child. *See Brokaw*, 235 F.3d at 1011. Winters may proceed on her Fourth Amendment claim against Officers Perez and Ramirez. Whether her allegations survive summary judgment is another matter.

Winters has also alleged sufficient facts to support a claim for a violation of her substantive due process right to familial association under the Fourteenth Amendment. (ECF No. 6 at 2.) To state a claim under Section 1983, Winters must identify a person or persons, like a police officer, acting under color of law who violated her federal rights. *Case*, 327 F.3d at 566. To state a claim

for a violation of a right secured under substantive due process, like the right to familial association, a plaintiff must plead that: (1) a government actor's conduct violated the plaintiff's fundamental rights or liberties; and (2) the conduct was both arbitrary and irrational. *Campos v. Cook Cnty.*, 932 F.3d 972, 975 (7th Cir. 2019) (citing *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997); *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998)).) Parents have a recognized fundamental right to make decisions concerning the care, custody, and control of their children, but this right is limited; the state can remove children from a parent's care when it has definite and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse. *See Brokaw*, 235 F.3d at 1020 (7th Cir. 2000); *see also Troxel v. Granville*, 530 U.S. 57 (2000). State actors removing a child can implicate both the Fourth Amendment *and* the parent's fundamental rights under the due process clause. *See Brokaw*, 235 F.3d at 1010–12, 1020. The government's unreasonable forced separation of a child from his parent can violate substantive due process if the government's conduct is arbitrary and irrational. *See id.* at 1018–19. Winters's complaint does not specify exactly what happened after the July 31, 2025 removal, but it appears her child was separated from her for some period of time. Winters also alleges that various officers engaged in conduct that related to the eventual removal of her child. She contends that Officers Rivera, Miller, Griffin, and Petty, and Lieutenants Cabral, Davis, and Woods refused to take her reports, accused Winters of filing false reports, disclosed information to the "violating parties," and threatened to arrest her on July 4, 5, 6, 7, and 9, 2025. (ECF No. 1 at 1.) She alleges that Officers Basaldua and Behrs, and Sergeant Cabral "delayed reporting and allowed child to remain unlawfully absent beyond 24 hours." (*Id*.) She also asserts that Officer Burch improperly kept her on the telephone while police released her child to his paternal aunt on July 24, 2025. (*Id*.) Because she is proceeding *pro se*, the Court will construe her complaint liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). She has sufficiently alleged conduct that may be related to the later removal and separation that the Court will allow her to proceed against the Milwaukee Police Department Officers she names as Defendants. Whether these alleged facts are accurate, or able to survive a motion for summary judgment is, again, another question to be resolved later, and not now, at the screening stage.

       Winters does not allege sufficient facts to state a Fourteenth Amendment equal protection claim. To raise a claim under the equal protection clause, Winters must allege purposeful discrimination directed at an identifiable or suspect class. *See Cleburne v. Cleburne Living Ctr.*,

473 U.S. 432, 439 (1985); *see also McClesky v. Kemp*, 481 U.S. 279, 292 (1987). In her complaint, Winters does not assert that she is a member of a protected class or describe how she could be considered a class of one. *See Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012) (holding a plaintiff stating a class of one claim must allege treatment different from others who are similarly situated and that there is no rational basis for the difference in treatment) (citations omitted). She does not provide any facts that suggest the Defendants have treated any other similarly situated person differently. This claim will be dismissed.

Winters also does not allege facts to support her Fourteenth Amendment denial of access to courts claim. To proceed on a denial of access to courts claim, Winters must identify a nonfrivolous, underlying claim, the official acts frustrating the litigation, and a remedy that may be available as recompense but that is not otherwise available in a suit or settlement." *Harer v. Casey*, 962 F.3d 299, 308 (7th Cir. 2020). Generally, these claims either involve systemic official action that prevents a plaintiff from preparing and filing a suit now,[2] or official action in the past that prevents a claim from being tried *now*. *Christopher v. Harbury*, 536 U.S. 403, 413–14 (2002). In either type of denial of access to courts claim, "the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416 (referencing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513–15 (2002)). The first type of claim seems inapplicable; Winters is pursuing a lawsuit now and does not describe any way that a state actor is impeding her ability to do so. *See id.* at 413–14. The second type of claim is also not supported by Winters's complaint. The complaint does not identify what underlying cause of action or remedy Winters can no longer pursue, and what past official act caused it to be unavailable now. *Id.* at 415–16. Accordingly, this claim too fails.

Winters's allegations fail to plausibly allege claims against all of the Defendants she names. While she sues the Milwaukee Police Department, a police department is not a "person" capable of being sued under Section 1983. *See Best v. City of Portland*, 554 F.3d 698, 698 n.* (7th Cir. 2009) ("[A] police department is not a suable entity under [Section] 1983.") The Court will therefore dismiss all claims against the MPD itself and remove it as a defendant in this action. Winters's claims against the City of Milwaukee must also be dismissed. To state a municipal liability claim under Section 1983, a plaintiff must allege that she suffered a constitutional injury

---

[2] This type of claim is often brought by prisoners who wish to pursue claims, but who cannot access legal resources, like a law library, due to some official action.

and that the municipality authorized or maintained a custom of approving the unconstitutional conduct. *Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Petty v. City of Chicago*, 754 F.3d 416, 424 (7th Cir. 2014) (citing *Thompson v. Boggs*, 33 F.3d 847, 859 (7th Cir. 1994)). Mere legal conclusions that the municipality is liable are not enough; the complaint must include facts supporting those conclusions. *Iqbal*, 556 U.S. at 678. Here, Winters does not explicitly discuss *Monell* and does not allege facts to suggest that the City of Milwaukee approved or maintained a policy of unconstitutional conduct. The Court will therefore dismiss the City of Milwaukee as a Defendant.

If any of the defendants, after receiving the amended complaint, believe that Winters fails to state a claim, or that they have a defense that precludes liability that they can raise at the pleadings stage, the Court's screening order does not preclude them from filing a motion to dismiss or a motion for judgment on the pleadings.

## CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Winters's amended complaint, ECF No. 6, is **DISMISSED in part**. Winters's Section 1983 claims alleging an equal protection violation, and a violation of her substantive due process right to access to courts are **DISMISSED**. Defendants City of Milwaukee and Milwaukee Police Department are **DISMISSED.**

**IT IS FURTHER ORDERED** that the United States Marshal to serve a copy of the complaint, waiver of service form and/or the summons, and this order on Defendants Perez, Ramirez, Rivera, Miller, Griffin, Petty, Cabral, Davis, Woods, Basaldua and Behrs under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). Although Congress requires the Court to order service by the U.S. Marshals Service, it has not made any provision for either the Court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). The U.S. Marshals will give Winters information on how to remit payment. The Court is not involved in collection of the fee. Winters is now required, under Fed. R. Civ. P. 5(a), to send a copy of every paper or document filed with the Court to the opposing parties or their attorney. Winters should also retain a personal copy of each document. The Court may disregard any papers or documents which do not indicate that a copy has been sent to the defendants or their attorneys. Winters is further advised that her

failure to make a timely submission, including notifying the Court of any changes in address, may result in the dismissal of this case for failure to prosecute under Civil L. R. 41.

Dated at Milwaukee, Wisconsin on February 17, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge