UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

OCTAVIA WINTERS,

Plaintiff,

v.

Case No. 25-cv-1802-bhl

CITY OF MILWAUKEE, et al.,

Defendants.

**ORDER**

On November 17, 2025, Plaintiff Octavia Winters filed an initial complaint in this lawsuit that contained almost no facts. (ECF No. 1.) That same day, she filed a nearly identical complaint in a separate lawsuit. *See Winters v. Kenosha Police Department*, Case No. 25-cv-1804-bhl (Nov. 17, 2025). The Court issued a screening order in this case and dismissed the initial complaint for failure to state a claim, but granted Winters leave to amend with a warning that she not make identical filings in multiple cases. (ECF No. 5.) Winters responded by filing an amended complaint, (ECF No. 6), which the Court also screened, (ECF No. 7). The Court allowed Winters to proceed on claims in that pleading against Milwaukee Police Officers Perez and Ramirez for an alleged Fourth Amendment violation and against Officers Rivera, Miller, Griffin, and Petty, and against Milwaukee Police Lieutenants Cabral, Davis, and Woods, for alleged violations of her Fourteenth Amendment substantive due process right to familial association. (*Id*. at 3–4.) Complicating matters, Winters then attempted to amend her complaint again but without obtaining Court permission. (ECF No. 30.) She also failed to sign the proposed pleading, which purported to add different claims with different facts and a host of additional defendants, many of whom did not have any identified involvement in the underlying facts alleged. (*Id*.) Because Winters failed to sign that purported amended pleading, the Court struck it for violating Federal Rule of Civil Procedure 11(a). (ECF No. 38.)

Instead of proceeding with the claims the Court allowed her to pursue in it screening order, Winters has now filed a further motion in which she requests several forms of relief. (ECF No.

39.) She asks that the Court reconsider and vacate its Order striking her unsigned complaint and grant her leave to file a signed second amended complaint. (*Id.* at 1.) She further requests reconsideration of the Court's denial of her motion for electronic filing privileges, seeks reassignment of this case, and argues for recusal of the assigned judge. (*Id.* at l, 5; ECF No. 45.)

The Court will grant some but not all of Winters's requests. The Court will allow Winters's latest attempt to amend her complaint and will treat her proposed second amended complaint as the operative pleading. In this order, the Court will also screen that complaint pursuant to 28 U.S.C. §1915(e)(2).[1] Because the second amended complaint fails to state a claim, the Court will dismiss her complaint, and, given that it is her third attempt to plead her claims, the dismissal will be with prejudice. The Court will deny Winters's motions for reassignment and recusal and will deny as moot her motion concerning her electronic filing privileges, and her request to subpoena witnesses.

## ALLEGATIONS

Octavia Winters is a Milwaukee resident and parent of a minor child. (ECF No. 39-1 at 2.) In her various complaints, Winters raises her dissatisfaction with the Milwaukee Police Department's efforts to support her own attempts to locate and exercise custodial rights over her teenage son. Her latest pleading names 27 individual defendants (employees of the Milwaukee Police Department (MPD) and Milwaukee County Sheriff's department), along with the City of Milwaukee and an unspecified number of John Does. (*Id.* at 2–3.) Her second amended complaint is difficult to understand, and the facts alleged are now substantially different from those she submitted in her two earlier complaints. Unhelpfully, Winters uses bullet points, omits key information, and repeatedly refers to "the restrained party," "violators," and "prohibited" party/parties without explaining who those people are. She also refers repeatedly to restraining orders but fails to identify any particular court order, does not specify who she believes the order restrains, and does not explain what the order prohibits. (*See e.g.*, *id.* at 4.) To the extent the Court can make sense of her allegations, Winters appears to be upset that police officers did not document her complaints about her child custody dispute, did not charge her child's father and other unnamed persons with a crime, did not take her concerns as seriously as she wished, did not recover her son

[1]Granting leave to amend her complaint renders moot Winters's motion for reconsideration of the Court's order striking her unsigned complaint and motion to vacate that order. (ECF No. 39.)

in the way she wished, and allowed her teenage son to leave rather than detaining him. None of these allegations plausibly states a valid federal claim.

In early July of 2025, Winters contacted Milwaukee police officers multiple times about alleged violations of her custody rights and an unspecified restraining order. (*Id.* at 1.) Winters is upset that they did not make reports about these alleged violations. (*Id.*) On July 6, 2025, two MPD officers told her to go to Kenosha to recover her child but then did not arrest "the restrained party" or recover her child. (*Id.* at 4.) Winters made other attempts to retrieve her child and enforce her unspecified restraining order during early July 2025, but police did not assist her and failed to charge an unspecified person with "custodial interference." (*Id.* at 4–5.)

In mid-July of 2025, Winters reported her son missing, but MPD officers did not classify him as "critically missing," nor note his alleged psychiatric problems, and instead "treated it as a standard missing-person case." (*Id.* at 5.) In late July 2025, MPD officers found Winters's son but "allowed unauthorized paternal-family contact," let him speak with "prohibited individuals," let him use a phone, and did not notify Winters when he left, or identify the adult who picked him up. (*Id.*) Winters accuses various MPD officers of helping an unnamed "prohibited party" take the child, and helped other unnamed people violate a restraining order on July 24–26, and 31, 2025. (*Id.* at 6.) She asserts that two MPD officers "facilitated the unlawful removal of [her] child" but does not describe what this means. (*Id.*) She no longer alleges that the child was taken from her home, as she had in a previous complaint. She alleges instead that the officers "deferred to Kenosha," and did not enforce Winters's unspecified order. (*Id.*) The officers also removed Winters from an MPD station without answering her questions. (*Id.*)

On August 18, 2025, Winters attempted to make a complaint to the MPD, but the officers did not document her request. (*Id.*) She accuses various officers of not documenting her reports, contacting suspects and warning them, and delaying the recovery of her child. (*Id.*) On August 23 through 24, 2025, Winters "filed a missing child report" and the child was found where Winters reported.[2] (*Id.*) Winters accuses the MPD of manipulating records because the department's documentation of this incident was incomplete and included reports under different names. (*Id.* at 7.)

On September 4, 2025, Winters called an MPD station and learned her son was there. (*Id.)* The officers did not keep her son at the station and allowed him to leave before she arrived. (*Id.*)

[2]She lists a person named "Jeannetta Griffin" as "suspect" with no other explanation. (*Id.* at 6.)

Winters further alleges that the MPD officers "facilitated communication" with unnamed "unauthorized parties." (*Id.*) Throughout September 2025, Winters asserts that officers minimized her complaints, "failed to recognize the pattern," "connect prior incidents," and "refused proper criminal classification." (*Id.* at 7.)

The second amended complaint next includes a section that appears to be written by artificial intelligence, affirming and praising Winters's previous allegations and stating how it will improve them next. (*Id.* at 8.) Winters alleges that she and her child "suffered significant harm, including danger to the child's safety, emotional distress, and loss of legal protections guaranteed by state and federal law." (*Id.* at 2.)

## ANALYSIS

### I. Winters's Complaint Fails to State a Claim and Will be Dismissed at Screening.

Winters has been granted leave to proceed *in forma pauperis* (IFP). (ECF No. 5.) The IFP statute also requires the Court to dismiss a case at any time if it determines that the plaintiff's allegations of poverty are "untrue," or if the action is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. *Cf.* 28 U.S.C. §1915(e)(2). Accordingly, after granting a *pro se* plaintiff's IFP request, the Court may screen the complaint to ensure the case should be allowed to move forward. In screening a *pro se* complaint, the Court applies the liberal pleading standards embraced by the Federal Rules of Civil Procedure. To survive screening, the complaint must comply with the Federal Rules and state at least plausible claims for which relief may be granted. To state a cognizable claim, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions occurred, and the nature and extent of any damage or injury the actions caused.

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."

*Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). If the complaint fails to allege sufficient facts to state a claim on which relief may be granted, it must be dismissed. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1018 (7th Cir. 2013).

Winters attempts to bring six claims, all under 42 U.S.C. §1983. To state a claim under Section 1983, Winters must identify a person or persons acting under color of law who violated her federal rights. *Case v. Milewski*, 327 F.3d 564, 566 (7th Cir. 2003). Police officers are persons acting under color of law and may thus be held liable under Section 1983. But, for various other reasons, discussed below, Winters's claims fail. Because she has already amended her complaint, the Court will dismiss her second amended complaint for failure to state a claim without leave to amend.

**A. Count I Fails Because Winters Cannot Advance her Child's Claim While Proceeding Pro Se.**

Winters's first claim alleges that Defendants violated *her child's* Fourteenth Amendment substantive due process rights by placing him in more danger than he would have been had they not acted. (ECF No. 39-1 at 10.) This claim fails because Winters may not, as a nonlawyer, advance a claim for an injury to her child's rights. Non-lawyer plaintiffs cannot represent others, including their minor children. *See Foster v. Bd. of Educ. of City of Chi.*, 611 Fed. Appx. 874, 877 (7th Cir. 2015) ("[T]he rule prohibiting a nonlawyer from representing another person extends to a parent attempting to represent her minor child *pro se*.") (collecting cases). Accordingly, Count I fails to state a claim that Winters may bring in this Court.

**B. Count II Fails Because Winters Has Not Alleged that Defendants Affirmatively Interfered With Her Right To Familial Association.**

Winters's second claim alleges Defendants violated her Fourteenth Amendment substantive due process right to "familial association / custodial interference." (ECF No. 39-1 at 11.) She states they did so by "undermining [her] authority, facilitating custodial interference, and failing to enforce valid court orders." *Id.* These vague allegations are insufficient to plausibly state a valid constitutional violation and this claim will therefore also be dismissed.

To state a claim for a violation of her substantive due process rights, a plaintiff must plead facts to support an inference that: (1) a government actor's conduct violated the plaintiff's fundamental rights or liberties; and (2) the conduct was both arbitrary and irrational. *Campos v. Cook Cnty.*, 932 F.3d 972, 975 (7th Cir. 2019) (citing *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997); *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998)).) Substantive due process protects against only the most egregious and outrageous government action. *Id.* Parents have a recognized fundamental right to make decisions concerning the care, custody, and control of their children. *See Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1020 (7th Cir. 2000); *see generally Troxel v. Granville*, 530 U.S. 57 (2000). The government's unreasonable forced separation of a child from his parent can violate substantive due process if the government's conduct is arbitrary and irrational. *See Brokaw,* 235 F.3d at 1018–19.

Notably, Winters's second amended complaint does not allege facts related to the removal of her child from her home. In her first amended complaint, she alleged that her child was removed from her home and care without notice or a "valid court order" by some of the individual Defendants. (ECF No. 6 at 1.) Those allegations provided a factual basis to proceed on her claim as pleaded in that complaint. But she no longer includes allegations about that supposed event in her second amended complaint, which supersedes her earlier pleading. (*See* ECF No. 39-1.) Her vague and conclusory allegations that police officers were "undermining" Winters's authority is insufficient to support a substantive due process claim. The only specific facts she provides are that various police officers allowed her teenage child to use a phone, to leave police custody, to talk to unidentified "prohibited individuals," and to leave a police station with other adults. (ECF No. 39-1 at 5–6, 8.) None of these are violations of Winters's substantive due process rights. Moreover, to the extent Winters's allegations suggest she is upset with officers' refusal to assist in the enforcement of her restraining order or to make an arrest at her request, she does not have any constitutional right to either of those actions. *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 768 (2005) (holding that respondent did not have a constitutional property interest in police enforcement of her restraining order, and "the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause"). Defendants' refusal to do as Winters would have wished does not amount to a violation of substantive due process. These allegations fail to state a plausible claim for relief.

### C. Count III Fails Because Winters Does Not Allege Purposeful Discrimination Directed at an Identifiable or Suspect Class.

Winters's third claim alleges a violation of her right to equal protection. To raise a claim under the equal protection clause, Winters must allege purposeful discrimination directed at an identifiable or suspect class. *See Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *see also McClesky v. Kemp*, 481 U.S. 279, 292 (1987). In her complaint, Winters does not assert that she is a member of a protected class or describe how she could be considered a class of one. *See Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012) (holding a plaintiff stating a class of one claim must allege treatment different from others who are similarly situated and that there is no rational basis for the difference in treatment) (citations omitted). She does not provide any facts that suggest the Defendants have treated any other similarly situated person differently. This claim will therefore be dismissed.

### D. Count IV Fails Because Winters Does Not Allege Facts to Suggest the City Approved or Maintained a Policy of Unconstitutional Conduct.

Winters's next claim is one for municipal liability against the City of Milwaukee. To state a municipal liability claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a plaintiff must allege that she suffered a constitutional injury and that the municipality authorized or maintained a custom of approving the unconstitutional conduct. *Petty v. City of Chicago*, 754 F.3d 416, 424 (7th Cir. 2014) (citing *Thompson v. Boggs*, 33 F.3d 847, 859 (7th Cir. 1994)). First, Winters has not shown a constitutional injury; without a constitutional violation, her *Monell* claim cannot proceed. *Id.* at 424–25. Second, mere legal conclusions that the municipality is liable are not enough; the complaint must include some facts to support those conclusions. *Iqbal*, 556 U.S. at 678. Here, Winters does not allege any facts to suggest that the City of Milwaukee approved or maintained a policy of unconstitutional conduct. This claim will therefore be dismissed.

### E. Count V Fails Because Winters Asserts No Facts Related to the City's Alleged Failure to Train or Supervise its Employees.

Winters's fifth claim asserts that the City of Milwaukee failed to adequately train and supervise officers regarding various issues related to child custody, restraining orders, "missing and endangered child protocols," and documentation. (ECF No. 39-1 at 12.) The Supreme Court recognized a failure to train theory of municipal Section 1983 liability in *City of Canton, Oh. v. Harris*, 489 U.S. 378, 388 (1989). But "failure-to-train liability is appropriate only when inadequate training 'amounts to deliberate indifference to the rights of persons with whom the

[employee] comes into contact.'" *Flores v. City of South Bend*, 997 F.3d 725, 731 (7th Cir. 2021) (quoting *Harris*, 489 U.S. at 388). Liability arises when a municipality adheres to a training program that they know or should know has "failed to prevent tortious conduct by employees," thereby showing deliberate indifference to a known risk. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407 (1997); *Flores*, 997 F.3d at 731.

Here, Winters alleges no facts about the training of any of the numerous MPD officers she refers to in her pleading. She alleges no facts to support a finding that the City of Milwaukee had knowledge of these officers' actions. Moreover, the conduct she alleges is a failure to enforce an unspecified restraining order, a failure to document her reports to her liking, and a failure to assess the situation involving her child as she has. None of those constitute criminally recklessly tortious conduct. *C.f. Flores*, 997 F.3d at 733–34 (officer's known criminally reckless speeding that resulted in plaintiff's death supported potential failure-to-train liability); *c.f. Ouza v. City of Dearborn Heights*, 969 F.3d 265, 288–89 (6th Cir. 2020) (defendant city's conceded failure to train police officers on probable cause determinations and use of force supported potential failure-to-train liability). This claim will also be dismissed.

**F. Count VI, a Denial of Access to Courts Claim, Also Fails.**

Winters's final claim alleges that defendants denied her access to the courts. To proceed on this claim, Winters must identify a nonfrivolous, underlying claim, official acts frustrating the litigation of that claim, and a remedy that may be available as recompense but that is not otherwise available in a suit or settlement. *Harer v. Casey*, 962 F.3d 299, 308 (7th Cir. 2020). Generally, these claims either involve systemic official action that prevents a plaintiff from preparing and filing a suit now,[3] or official action in the past that prevents a claim from being tried *now. Christopher v. Harbury*, 536 U.S. 403, 413–14 (2002). In either type of denial of access to courts claim, "the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416 (referencing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513–15 (2002)). The first type of claim is inapplicable; Winters is pursuing a lawsuit now and does not describe how a state actor is impeding her ability to do so. *See id.* at 413–14. The second type of claim is also not supported by Winters's complaint. The complaint does not identify what underlying cause of action or remedy Winters can no longer

---

[3] This type of claim is often brought by prisoners who wish to pursue claims, but who cannot access legal resources, like a law library, due to some official action.

pursue, and what past official act caused it to be unavailable now. *Id.* at 415–16. All she alleges is that the myriad Defendants did not document her reports to her liking, and this made it harder to enforce her unspecified "court orders." (ECF No. 39-1 at 12.) Accordingly, this claim too fails.

## II. Winters's Motions for Judicial Reassignment and Recusal Will be Denied.

A federal judge shall disqualify himself in "any proceeding in which his impartiality might reasonable be questioned" and any proceeding "[w]here he has a personal bias or prejudice concerning a party[.]" 28 U.S.C. §455(a)–(b)(1). In determining whether a judge must disqualify himself under these provisions, "the question is whether a reasonable person would be convinced the judge was biased." *Lac du Flambeau Indians v. Stop Treaty Abuse-Wis.,* 991 F.2d 1249, 1255 (7th Cir. 1993). The negative bias or prejudice must be grounded in some personal animus or malice that the judge holds against the party seeking recusal, of the kind that a fair-minded person could not set aside when deciding a case. *Hook v. McDade*, 89 F.3d 350, 355 (7th Cir. 1996). Recusal is only required when bias or prejudice is shown by compelling evidence that would convince a reasonable person. *Id.* (quoting *Liteky v. United States*, 520 U.S. 540, 555 (1994)).

In addition, 28 U.S.C. §144 specifies that "[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against [her] or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding." Ignoring the additional procedural requirements for now, the ultimate standard for recusal under 28 U.S.C. §144, is whether there is support for a finding of actual bias or prejudice. *See United States v. Barr*, 960 F.3d 906, 919 (7th Cir. 2020). This standard is therefore higher than for recusal under Section 455(a). *Reinoehl v. Centers for Disease Control and Prevention*, No. 22-1401, 2022 WL 14461946 at * 3 (7th Cir. Oct. 25, 2022).

Winters requests reassignment under 28 U.S.C. §144 and seeks recusal under §455(a). (ECF No. 45; ECF No. 39 at 5.) The Court will deny her requests. The conduct Winters identifies in her affidavit and motion are rulings the Court made while presiding over this litigation, and the fact that the Court referenced the existence of her multiple other civil rights cases in some of those rulings. Adverse rulings standing alone are not evidence of bias, *see Thomas v. Dart*, 39 F.4th 835, 844 (7th Cir. 2022) (citing *Liteky,* 510 U.S. at 555), and there is no evidence of any disqualifying conflict of interest or other ground for recusal presented. Moreover, the Court noted the existence of her other cases because she filed near identical complaints, (ECF No. 5 at 1, n.1)

and identical filings, (ECF No. 15). Winters also asserts the Court is holding her to a higher pleading standard. (ECF No. 39 at 5.) The Court has merely screened her complaints pursuant to 28 U.S.C. §1915(e)(2). Winters's allegations and affidavit would not cause a reasonable, well-informed observer to question the Court's impartiality. Because Winters cannot meet the standard of Section 455, the Court need not address whether her Section 144 motion was untimely, or whether a pro se litigant can even succeed under Section 144, which requires the certification of counsel that the affidavit is being filed in good faith. *See Reinoehl*, 2022 WL 14461964 at *3 (taking the same approach to a *pro se* plaintiff's motions for recusal and reassignment).

**CONCLUSION**

For the reasons discussed above, Winters's motion for leave to amend her complaint is granted, but her complaint is dismissed because it now fails to state a claim. The Seventh Circuit has instructed that a *pro se* plaintiff be afforded one opportunity to amend her complaint. *See Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022). Winters has already taken that opportunity, and the Court will not permit Winters to repeatedly amend her complaint. The Court will therefore dismiss Winters's second amended complaint with prejudice and without leave to amend. Her motions for recusal and reassignment are also denied. Her other motions, for reconsideration of the Court's order striking her unsigned complaint, to vacate that order, to subpoena witnesses, and for reconsideration of the order denying her electronic filing privileges are denied because they are now moot.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for leave to file a second amended complaint is **GRANTED**, ECF No. 39, but her complaint, ECF No. 39-1, is dismissed with prejudice for failure to state a claim. The Clerk of Court is directed to enter judgment accordingly.

**IT IS FURTHER ORDERED** that Plaintiff's motions for recusal and reassignment, ECF Nos. 39 and 45, are **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's additional motions, to reconsider and vacate the order striking her unsigned complaint, to reconsider the order denying her electronic filing privileges, and to subpoena witness, ECF Nos. 39 & 40, are **DENIED** as moot.

Dated at Milwaukee, Wisconsin on October 8, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge